UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD ROBERTS, No. 22585-021<br><br>          Petitioner,<br><br>     v.<br><br>DANIEL SPROUL, Warden<br><br>          Respondent. | Case No. 22-cv-2-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Richard Roberts's petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 and its supplement (Docs. 1, 3, & 4) in which he challenges the computation of his 41-month federal sentence. The petitioner is incarcerated at the United States Penitentiary at Marion, Illinois ("USP-Marion"). Warden Daniel Sproul has responded to the motion (Doc. 14), and the petitioner has replied to that response (Doc. 15). The Court also considers Roberts's motion for appointment of counsel (Doc. 12), to which the Warden has responded (Doc. 14). The Court will dismiss the petition without prejudice because Roberts failed to exhaust his administrative remedies without cause or a good excuse before filing his petition.

**I.     Background**

In September 2018, Roberts pled guilty in the United States District Court for the Southern District of Georgia to one count of wire fraud and was sentenced to serve 41 month in prison. *United States v. Roberts*, No. 6:18-cr-00003-LGW-CLR (S.D. Ga.). His projected release date is June 3, 2024. *See* BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (visited June 8, 2022); Teters Decl. ¶ 7, Att. H (Doc. 13-1). He claims that the BOP has incorrectly calculated his release date because it did not give him credit for time served in state custody in Kentucky and did not accurately assess his original sentence. A chronological review of the relevant events is helpful:

On January 12, 2018, state authorities in Kentucky arrested and detained Roberts.

On February 7, 2018, a federal grand jury in the Southern District of Georgia indicted Roberts on multiple charges. *United States v. Roberts*, No. 6:18-cr-00003-LGW-CLR. For the federal proceedings, the U.S. Marshals Service ("USMS") took Roberts into temporary custody from state officials pursuant to a writ of habeas corpus *ad prosequendum* on June 12, 2018. He remained in temporary federal custody through his April 2, 2019, sentencing by U.S. District Judge Lisa Wood, who sentenced him to serve 41 months in prison. Teters Decl. ¶ 4, Att. C (Doc. 13-1). She did not expressly state whether the sentence she imposed should be concurrent with or consecutive to any state sentence. The USMS returned Roberts to state custody on April 29, 2019, and Roberts's federal judgment was used to lodge a detainer. Later, Roberts was sentenced for multiple state convictions and imprisoned in a Kentucky prison to serve those sentences.

The Commonwealth of Kentucky paroled Roberts on July 22, 2021, and he entered exclusive federal custody the following day pursuant to the federal detainer. He was then transported to federal prison, where the BOP took custody of him on August 10, 2021. The BOP began running Roberts's 41-month sentence from July 23, 2021, the day he was in exclusive federal custody. Teters Decl. ¶ 7, Att. H (Doc. 13-1).

In his § 2241 petition, Roberts complains about the BOP's computation of his remaining time to serve. Specifically, he faults the BOP with failing to retroactively designate the Kentucky prisons where he served his state sentences as the location for serving his federal sentence. If the BOP had done that, the state and federal sentences would have run concurrently, and Roberts would likely be finished serving his federal sentence by now. He further complains that the BOP failed to account for time credit Judge Wood gave him at sentencing. Roberts estimates that after correction of these two errors, it will be clear that he completed his federal sentence on or around June 2, 2021.

The Warden contends that Roberts has failed to exhaust his administrative remedies and that, even if he had, the BOP has appropriately calculated his sentence.

**II.     Analysis**

Roberts admits he failed to exhaust his administrative remedies, and the Court declines to excuse that failure.  Generally, when an inmate believes the BOP is computing his sentence incorrectly, he must exhaust his administrative remedies before filing a § 2241 petition.  *See United States v. Koller*, 956 F.2d 1408, 1417 (7th Cir. 1992).  The administrative remedy process is a valuable step in resolving inmates' complaints about time computation and placement decisions, areas particularly within the expertise of the BOP.  *See United States v. Wilson*, 503 U.S. 329, 335 (1992).  Administrative exhaustion gives prison officials an opportunity to address problems and take corrective action before involving the Court, and if the Court does get involved, there is a more complete administrative record for the Court to review.  *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (explaining the purposes of the exhaustion requirement in 42 U.S.C. § 1997e(a)).  Although there is no express exhaustion requirement in § 2241, there is one under the common law.  *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004).  The Court may, indeed, require it before it entertains a § 2241 petition.  *Koller*, 956 F.2d at 1417.

The BOP's Administrative Remedy Program for an inmate's issue "relating to any aspect of his/her own confinement" is set forth in 28 C.F.R. § 542.10 *et seq.*  To challenge a BOP sentence computation, the inmate should first try to resolve the issue informally with prison staff (Form BP-8).  28 C.F.R. § 542.13.  If that doesn't work, the inmate must submit an Administrative Remedy Request (on a Form BP-9) to institutional staff.  28 C.F.R. § 542.14(a), (c)(4).  The warden must respond with 20 days, subject to a 20-day extension.  28 C.F.R. § 542.18.  If the inmate is not satisfied with the warden's response to his BP-9, he may submit an appeal (on a Form BP-10) to the appropriate BOP Regional Director within 20 days of the warden's response.  28 C.F.R. § 542.15(a).  The Regional Director must respond within 30 days, subject to a 30-day extension.  28 C.F.R. § 542.18.  If the inmate is not happy with the Regional Director's response, he may appeal further to the BOP General Counsel (on a Form BP-11) within 30 days of the regional response, with some exceptions if there is a valid reason for delay.  28

C.F.R. § 542.15(a). The General Counsel must respond within 40 days, subject to a 20-day extension. 28 C.F.R. § 542.18. The appeal to the General Counsel is the final step in the Administrative Remedy Program. *Id.* Inmate deadlines are subject to extension for valid reasons for delay. 28 C.F.R. §§ 542.14(b), 542.15(a).

The Court may excuse the failure to exhaust where:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004).

Roberts admits he did not complete the exhaustion process set forth above. He began informal efforts to resolve his sentence computation concerns on December 26, 2021, by filing a BP-8, Pet. 5 (Doc. 1); Wallace Decl., Att. B (Doc. 13-2), and an Inmate Request to Staff (commonly called a "cop-out") to the Regional Director, Pet. 4 (Doc. 1). The following day, he drafted his § 2241 petition and mailed it to the Court. Roberts's counselor denied his BP-8 on January 4, 2022, Wallace Decl., Att. B (Doc. 13-2); there is no response from the Regional Director in the record.

Not surprisingly, Roberts was not satisfied with his counselor's denial of his BP-8, so on January 19, 2022, he filed a BP-9. Wallace Decl. ¶ 6, Att. B (Doc. 13-2). The BOP then asked Judge Wood for guidance about whether Roberts's federal sentence should be concurrent or consecutive to his state sentences. She indicated it should be consecutive. Teters Decl. ¶¶ 13 & 14, Att. I & K (Doc. 13-1). The BOP then reviewed the relevant statutory factors, *see* 18 U.S.C. § 3621(b), regarding designation of a state facility to serve a federal sentence (which would effectively make them run concurrently), Teters Decl. ¶ 14, Att. L (Doc. 13-1), and denied Roberts's BP-9 in writing on March 17, 2022. Wallace Decl. ¶ 6, Att. B (Doc. 13-2). Roberts did not further pursue his administrative remedy.

Roberts asks the Court to excuse his failure to exhaust. He argues that on December 27, 2021,

4

when he filed his petition to the Court, he had not received a response from his BP-8 or the cop-out he sent directly to the Regional Director. That was no surprise since he had only filed the BP-8 a day before and had not allowed an adequate opportunity for a response before running to the Court. Indeed, his counselor responded to his BP-8 within 8 days, hardly an unreasonable delay. As for his cop-out to the Regional Director, that was outside the established administrative remedy process, so the Regional Director's failure to respond quickly cannot be construed as unreasonably delayed under the established remedy framework. Roberts simply did not give the administrative remedy procedure time to work before appealing directly to the Court.

Roberts claims his failure to exhaust should be excused because, in light of his claim to immediate release, he would be prejudiced from having to spend the time going through the administrative remedy process. It is true that "looming dates" may excuse exhaustion. *See Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). However, the mere possibility that an inmate may be subject to immediate release is not sufficient by itself to excuse exhaustion, especially when the press of time is aggravated by the petitioner's own delay in acting.

In July 2021, when Roberts was paroled from state prison, he should have known the BOP was running his federal sentence consecutive to his state sentences. Nevertheless, he waited until late December 2021, five months later, before complaining about this to the BOP. In that five months, he could have made substantial progress toward exhaustion, especially in light of the response deadlines in the BOP's administrative remedy process. Indeed, when Roberts actually started that process, it took less than three months to get a response from the Warden, which Roberts could have appealed up the administrative remedy chain. Instead, he waited, then rushed to file a lawsuit only days after he began the process.

Here, the administrative process allowed the BOP to investigate the circumstances surrounding Roberts's various sentences, to get Judge Wood's input on whether his federal sentence should be

5

concurrent or consecutive to his state sentence, and to weigh the relevant statutory factors concerning retroactive designation of a state facility for his federal sentence. Bypassing the administrative review process deprived the BOP of an opportunity to resolve this dispute and deprived the Court of the benefit of the BOP's thorough consideration of the issue before Roberts filed his § 2241 petition.

Because Roberts failed to exhaust his administrative remedies, and he has shown no good cause for that failure or good reason to excuse exhaustion, the Court will dismiss Roberts's petition for failure to exhaust administrative remedies.

Furthermore, because Roberts was able to articulate his arguments well in his briefing and the presence of counsel would not have had a reasonable chance of producing a different result, the Court will deny Roberts's motion for appointment of counsel.

### III.   Conclusion

For the foregoing reasons, the Court **DENIES** Roberts's motion for appointment of counsel (Doc. 12), **DISMISSES** Roberts's § 2241 petition (Doc. 1) **without prejudice** to another such petition once he has exhausted his administrative remedies, and **DIRECTS** the Clerk of Court to enter judgment accordingly.

If the petitioner wishes to appeal this decision, generally he must file a notice of appeal with this Court within 60 days of the entry of judgment. Fed. R. App. P. 4(a)(1)(B). A motion under Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. Fed. R. App. P. 4(a)(4). A Rule 59(e) motion must be filed no more than 28 days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from judgment, do not toll the deadline for an appeal.

If the petitioner files a motion for leave to appeal *in forma pauperis*, he must include in his motion a description of the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he appeals and is allowed to proceed *in forma pauperis*, he will be liable for a portion of the $505.00 appellate filing

fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal.  *See* Fed. R. App. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008).

It is not necessary for the petitioner to obtain a certificate of appealability from this disposition of his § 2241 petition.  *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**
**DATED:  June 17, 2022**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
